IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02071-MSK-CBS

CLARA E. SALAZAR, and
JUANITA YBARRA, on behalf of themselves and others similarly situated,

       Plaintiffs and Proposed Collective and Class Action Representatives,

v.

BUTTERBALL, LLC.,

       Defendant.

---

## ORDER OVERRULING OBJECTIONS, ADOPTING RECOMMENDATION OF MAGISTRATE JUDGE, AND GRANTING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on the Recommendation of the Magistrate Judge (**#82**), to which the Plaintiffs objected (**#84**), and Defendant Butterball, LLC ("Butterball") responded (**#85**) and filed supplemental authority (**#86**). The Recommendation addressed Butterball's Motion for Summary Judgment (**#40**), to which the Plaintiffs responded (**#51**), and Butterball replied (**#56**); the Plaintiffs' Motion for Partial Summary Judgment (**#41**), to which Butterball responded (**#48**), and the Plaintiffs replied (**#54**); and the Plaintiffs' Motion to Certify Class (**#34**) and accompanying brief (**#37**), to which Butterball responded (**#45**), and the Plaintiffs replied (**#55**). Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I.   Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.   Material Facts

In his Recommendation, the Magistrate Judge set forward the relevant facts in detail. Neither party contends that the factual recitation is erroneous in any respect. Accordingly, the Court adopts the factual recitation set forth in the Recommendation as if set forth herein.

In summary, the Plaintiffs are employees at Butterball's Longmont, Colorado processing plant. To perform their jobs, they are required to wear items such as hard hats, hair nets, safety glasses, ear protection, aprons, blue coats, boots, overshoes, arm guards, plastic sleeves, mesh gloves, and/or liner gloves. The Plaintiffs "don" these items before each shift and after each break and "doff" them before each break and after each shift. They are not compensated for the time they spend donning and doffing, the time spent sanitizing the items, or the time spent walking to and from their work stations.[1]

Based on Butterball's failure to pay hourly wages for the time spent donning and doffing, the Plaintiffs bring two claims against Butterball: (1) violation of the Fair Labor Standards Act ("FLSA"); and (2) violation of Wage Order 24 promulgated under the Colorado Minimum Wage Act ("CMWA").

## III.   Issue Presented

The central dispute in this lawsuit is whether Butterball is required to compensate its employees for time spent donning and doffing under either the FLSA or the CMWA. Resolution of the dispute as to the FLSA requires a determination as to the applicability of 29 U.S.C.

---

[1] For ease of reference, the Court shall refer to these activities as donning and doffing. Notably, the Recommendation generally focuses on donning and doffing, alone. The parties do not dispute this framework and neither objects to the Recommendation as not addressing sanitization or time spent walking.

§203(o), which excludes the time spent "changing clothes" if the employer had a prevailing custom or practice of non-payment for such activities. As to the CMWA, resolution requires a determination of whether Butterball is covered by Wage Order 24 as a food and beverage business.

## IV.    Standard of Review

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), a party may object to any portion of a magistrate judge's recommendation by filing specific objections within 10 days of the party's receipt of the recommendation. When timely objections are filed, the district court must review *de novo* the particular conclusions of the magistrate judge to which specific objections have been directed. 28 U.S.C. § 636(b)(1)(C); *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996).

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). In this case, the parties agree that both the determination of the application of section 203(o) and the determination of whether Butterball is covered by Wage Order 24 are matters of law.

## V.    Analysis

As noted above, the Plaintiffs bring two claims for relief, one under the FLSA and one under the CMWA, both of which center around Butterball's failure to pay its employees for time spent donning and doffing. The Plaintiffs sought collective action certification on its FLSA claim and class certification on its CMWA claim (**#34**). Butterball moved for summary judgment on both of the Plaintiffs' claims arguing that the claims were barred by the application of section 203(o) or, alternatively, that donning and doffing does not constitute "work" that must

be compensated **(#40)**.  The Plaintiffs simultaneous moved for summary judgment as to

Butterball's section 203(o) defense **(#41)**.  All of these motions were referred to the Magistrate

Judge.  On December 3, 2009, the Magistrate Judge issued a thorough and well-reasoned Report

and Recommendation (the "Recommendation") recommending that Butterball's Motion for

Summary Judgment be granted and the Plaintiffs' Motion for Partial Summary Judgment be

denied, and that the Plaintiffs' Motion to Certify be denied as moot.

Generally, the Recommendation concluded that (I) the donning and doffing of protective

gear constitutes "changing clothes" within the meaning of section 203(o); (ii) the employer had a

custom or practice, of which the Plaintiffs were aware, of non-compensation for donning and

doffing; and (iii) the CMWA's Wage Order 24 did not apply to Butterball.  The Plaintiffs object

to each of these conclusions as well as the reasoning leading to the conclusions.  The Court shall

address each objection in turn.

A.      FLSA

The FLSA provides that employers must pay their employees a minimum wage for all

hours worked and an overtime wage for all hours worked in excess of forty hours per week.  *See*

29 U.S.C. §§ 206(a)(1)) and 207(a)(1).  In computing the hours an employee works under

sections 206 and 207, "any time spent in changing clothes or washing at the beginning or end of

each workday which was excluded from measured working time during the week involved by

the express terms of or by custom or practice under a bona fide collective bargaining agreement

applicable to the particular employee" is excluded.  *See* 29 U.S.C. § 203(o) (definition of "hours

worked").

By its terms, section 203(o) requires two conditions be met: (1) the conduct in question

constitute "changing clothes or washing" and (2) such activities are not compensated by the employer either pursuant to the express terms of, or a custom or policy under, a bonafide collective bargaining agreement ("CBA"). *See, e.g.*, *Anderson v. Cagle's Inc.*, 488 F.3d 945, 955–59 (11th Cir. 2007) (addressing the two elements separately). The Recommendation concluded that both of these elements were met and, therefore, Butterball did not violate the FLSA by not compensating its employees for time spent donning and doffing. The Plaintiffs make the following objections with regard to this conclusion.

1.     Section 203(o) is an Exemption

As a preliminary matter, the Plaintiffs contend that the Recommendation erroneously concluded that section 203(o) is an not an exemption and thus failed to narrowly construe the provision in analyzing its application in this case. To support their contention that section 203(o) is an exemption entitled to narrow construction, the Plaintiffs cite to *Alvarez v. IBP, Inc.*, 39 F.3d 894 (9th Cir. 2003). In *Alvarez*, the Ninth Circuit treated section 203(o) as an exemption and narrowly construed its application. The Ninth Circuit, however, failed to provide any reasoning as to why the provision constitutes an exemption. Rather, it merely assumed that the provision was an exemption entitled to narrow construction.

This Court agrees with the Recommendation and finds the Eleventh Circuit's reasoning in *Anderson*, 488 F.3d at 956–57, persuasive on this issue. *Anderson* concluded that section 203(o) was not an exemption, but rather a definitional exclusion. In so concluding, it addressed *Alvarez's* contrary holding but found that *Alvarez* was an outlier case. It noted that all of the cases cited by *Alvarez* to support categorizing section 203(o) as an exemption addressed another section of the FLSA, which is entitled "exemptions." *Anderson* reasoned that Congress's failure

to place section 203(o) under this heading indicated that it did not intend for section 203(o) to be treated as an exemption. Therefore, the Eleventh Circuit concluded that section 203(o) was not an exemption but rather a definition that limits the scope of the FLSA's hour and wage provisions.

The Plaintiffs provide no argument as to why *Alvarez* sets forth the better reasoning except a conclusory statement that *Alvarez* was correctly decided. This Court, however, agrees with the reasoning and conclusion in *Anderson* and, accordingly is not bound to narrowly construe section 203(o) as exemption. *See also Allen v. McWane, Inc.*, 593 F.3d 449, 458 (5th Cir. 2010) (finding *Anderson's* critique of *Alvarez* regarding whether section 203(o) is an exemption persuasive).

### 2. Donning and Doffing Does Not Constitute "Changing Clothes"

The Plaintiffs generally dispute the Recommendation's conclusion that donning and doffing constitutes "changing clothes" within the meaning of section 203(o) and specifically object to the Recommendation's reliance on certain factors. The Recommendation looked to a variety of factors in determining that the donning and doffing at issue in this case is covered by section 203(o): the Department of Labor's ("DOL") Opinion Letters, the legislative intent of Congress in enacting section 203(o), and case law on the issue.

First, the Plaintiffs object to the Recommendation's reliance on *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994). In *Reich*, the Tenth Circuit addressed a claim similar to the one here, that an employer was unlawfully failing to compensate employees for the time spent donning, doffing, and cleaning protective equipment and clothing. The Court determined that donning and doffing "standard protective gear . . . not uniquely required by" a particular job was

not compensable because it did not constitute "work", which requires some degree of physical or mental exertion. The Court reasoned that donning and doffing standard safety equipment such as hard hats, safety glasses, and earplugs "takes all of a few seconds and requires little or no concentration." The Court further noted that this type of activity could also be non-compensable because the time spent engaging in it is *de minimis*. Conversely, the Court determined that donning and doffing specialized protective gear was compensable because it required a level of physical exertion, time and concentration. The Tenth Circuit reaffirmed the distinction based on concentration, time and physical exertion in *Smith v. Aztec Well Serv'g Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006).

The Plaintiffs provide significant argument as to why *Reich* is no longer good law and why a distinction between "unique" and "non-unique" equipment is not relevant to a determination of compensability under the FLSA. The Plaintiffs, however, have misinterpreted the Recommendation. The Recommendation expressly declined to reach the issue of whether the donning and doffing of "non-unique" protective gear is non-compensable as not "integral and indispensable" or *de minimis*. Rather, the Recommendation appears to have included the discussion of *Reich* as merely background information on the Tenth Circuit's case law regarding the issue of donning and doffing.[2] Thus, the Plaintiffs' objections to the analysis of *Reich* is irrelevant as it did not provide any bases on which Recommendation relied in determining the applicability of section 203(o).

---

[2] The Court notes, however, that *Reich*, although not addressing section 203(o), provides some guidance as to whether donning and doffing protective gear constitutes changing clothes. *Reich's* conclusion that donning and doffing standard protective gear requires little to no physical exertion, concentration, or time supports a conclusion that such activities are akin to changing clothes, *i.e.*, they are completed relatively quickly and easily as opposed to an activity beyond the simple task of changing clothes.

Second, the Plaintiffs argue that the Recommendation inappropriately concluded that the

DOL Opinion Letters were entitled to some deference.  In the DOL's 1997 and 2001 Opinion

Letters, the DOL took the position that donning, doffing, and cleaning protective gear was not

"changing clothes" within the meaning of section 203(o) and, therefore, that the time spent on

these activities could not be excluded from hours worked.  In 2002, however, the DOL withdrew

the two previous letters, and concluded "based upon a reexamination of the statute and

legislative history, that the 'changing clothes' referred to in section 3(o) applies to the putting on

and taking off of the protective safety equipment typically worn in the meat packing industry"

which generally include "mesh aprons, plastic belly guards, mesh sleeves or plastic arm guards,

wrist wraps, mesh gloves, rubber gloves, polar sleeves, rubber boots, shin guards, and weight

belts."  After considering the ordinary meaning of the word "clothes", the use of the word

"clothes" by the DOL and case law, the purpose of section 203(o), and the legislative history of

section 203(o), the 2002 Opinion Letter reasoned that the term "clothes" as used in section

203(o) included "items worn on the body for covering, protection, or sanitation."  The 2002

Letter also noted that the fact that an item is cumbersome or worn over other clothing does not

stop it from being considered "clothes."  A fourth Opinion Letter issued in 2007 specifically

addressed the Ninth Circuit's contrary opinion in *Alvarez*, 39 F.3d 894, which concluded that

donning and doffing protective gear did not constitute "changing clothes."  The DOL stated that

it had not changed its opinion based on *Alvarez* and reiterated that, in its view, the "clothes"

covered by section 203(o) includes "among other things, heavy protective safety equipment

worn in the meat packing industry such as mesh aprons, sleeves and gloves, plastic belly guards,

arm guards, and shin guards."  Thus, outside the Ninth Circuit, courts may continue to rely on

the DOL's opinion that section 203(o) applies to protective gear in the meat-packing industry.

The Recommendation found that deference to the Opinion Letters was appropriate and that the conclusions and reasoning contained in the 2002 and 2007 Opinion Letters was persuasive. The Plaintiffs argue that the DOL Opinion Letters are not entitled to deference because the DOL changed positions in 2002. This Court, however, concludes that the Recommendation adequately addressed the DOL's change of position and its effect on the level of deference afforded the Opinion Letters and was correct to afford deference to the DOL Opinion Letters.

The deference afforded to an agency interpretation, such as an Opinion Letter, is determined in accordance with *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Under *Skidmore*, agency interpretations are not controlling on courts, but are sources to which courts may look for guidance as they incorporate an agency's specialized experience with the issue, the broader information and investigation available to the agency, and the "value of uniformity in its administrative and judicial understandings of what a national law requires." *See United States v. Mead Corp.*, 533 U.S. 218, 234 (2001). Thus, Opinion Letters and the like are entitled to respect or deference to the extent that they have the "power to persuade", which is based on the thoroughness of the evaluation, the validity of the reasoning, the opinion's consistency with earlier and later pronouncements, and any other factors which a court finds relevant. *See Skidmore*, 323 U.S. at 140 ; *McGraw v. Barnhart*, 450 F.3d 493, 501 (10th Cir. 2006) ("Under *Skidmore*, the degree of deference given informal agency interpretations will vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position."). Under

this framework, the Ninth Circuit has noted that an agency interpretation that conflicts with the agency's earlier interpretation is entitled "to considerably less deference than a consistently held agency view." *See Alvarez*, 339 F.3d at 905 n.9.

The Plaintiffs urge the Court to follow the Ninth Circuit's lead and reject the DOL's opinion on the issue because it is inconsistent with its own prior opinion. The Court declines such invitation as *Alvarez* is not controlling and the Court does not find *Alvarez's* reasoning on the issue persuasive. In determining whether to afford any deference to the DOL Opinion Letters, *Alvarez* addressed only a single component of the *Skidmore* framework—consistency. *Alvarez* did not address the thoroughness of the evaluation, the validity of the reasoning, the expertness of the agency, or the persuasiveness of the agency's position. The Court finds that each of these other factors weighs in favor of affording deference. Indeed, the 2002 Opinion Letter engaged in an very thorough and well-reasoned analysis of the issue including the ordinary meaning of the word "clothes", the prior use of the word in the context of protective gear, the legislative history of the provision, and the purpose of the provision. The Court finds the agency's position and reasoning persuasive. Furthermore, the DOL has the benefit of expertise in this area and is able to evaluate the provision on a national level. Finally, the Court notes that although the 2002 Opinion Letter reversed the DOL's prior position, the DOL's position has remained consistent for almost eight years, even when confronted with a contrary opinion from the Ninth Circuit. Therefore, the Court concludes that the Recommendation was correct to afford deference to the DOL Opinion Letters.

Third, the Plaintiffs argue that the Recommendation erred in adopt the reasoning of *Anderson*, 488 F.3d at 954–59, as opposed to that of *Alvarez.*, 39 F.3d at 904–05. The Plaintiffs

argue that *Alvarez* was correctly decided and that numerous district courts have followed the reasoning in *Alvarez*. Conversely, Butterball argues that *Alvarez* was incorrectly decided and the Recommendation was correct in determining the issue in line with the reasoning in *Anderson*. The Court agrees with Butterball.

In *Alvarez*, the Ninth Circuit confronted a situation essentially identical to the one presented in this case: the employees in a meat processing plant were required to don and doff safety clothing and equipment, clean the supplies, and walk to their work stations, but were not compensated for these activities. The Ninth Circuit concluded that section 203(o) did not excuse the employer form compensating for these activities for two reasons. First, because it found that section 203(o) was an "exemption" under the FLSA, it narrowly construed the statute as not "plainly and unmistakably" including protective gear.

Second, the Court reasoned that specialized, protective gear is different than typical clothing because it is generally worn to provide a barrier against exposure to workplace hazards. For support, the Court cited to the Occupational Safety and Health Administration's ("OSHA") definition of "personal protective equipment" as "specialized clothing or equipment worn by an employee for protection against a hazard. General work clothes (e.g. uniforms, pants, shirts or blouses) not intended to function as protection against a hazard are not considered to be personal protective equipment." *See* 29 C.F.R. § 1910.1030(b). The Ninth Circuit concluded that this definition provided a useful distinction between general clothes and the protective gear that is required for meat packing workers.

This Court disagrees with *Alvarez* and, instead, finds the reasoning and analysis in *Anderson*, 488 F.3d 945, and *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209 (4th Cir.

2009), to be persuasive.  First, *Alvarez* rests on the presumption that section 203(o) is an

exemption and, therefore, must be narrowly construed.  As discussed *supra*, this Court does not

view section 203(o) as an exemption.  Thus, the standard by which *Alvarez* evaluated whether

protective gear constitutes "clothing" under section 203(o) is different than that applied by this

Court.  Second, *Alvarez's* reliance on OSHA's definition of personal protective equipment is

illogical.  The definition itself suggests that protective gear can constitute clothing as it states

that personal protective equipment is "specialized *clothing* or equipment."  Although the OSHA

definition goes on to distinguish general clothing, *i.e.*, uniforms, pants, shirts, and blouses, from

personal protective equipment, the definition certainly does not foreclose the conclusion that

protective gear can constitute clothing.  Furthermore, as the 2002 DOL Opinion Letter noted, an

OSHA regulation has also characterized a protective face shield as a type of "protective

clothing."

   Conversely to *Alverez*, *Anderson* and *Sepulveda* conclude that section 203(o)'s "clothes"

includes safety and protective gear.  Both of these courts reasoned that this conclusion was

supported by the ordinary meaning of the word "clothes", the legislative history of the provision,

and the statutory purpose behind the provision.  Both *Anderson* and *Sepulveda* turned to

Webster's Third New International Dictionary to define the term "clothes" as "all the garments

and accessories worn by a person at any one time."  This Court agrees that this definition

incorporates the common, contemporary meaning of the word "clothing" or "clothes" noting that

the Oxford English Dictionary defines clothes in a similar fashion, as "covering for the person;

wearing apparel; dress, raiment, vesture." The items at issue in this case, like those in *Anderson*[3]

and *Sepulveda*, plainly fall within these definitions: hard hats, hair nets, safety glasses, ear

protection, aprons, blue coats, boots, overshoes, arm guards, plastic sleeves, mesh gloves, and/or

liner gloves all constitute "covering for the person" or "garments and accessories." The Court

further agrees with *Sepulveda* that there is no indication in the plain meaning of "clothes" or

section 203(o) that distinguishes between standard clothing and protective gear as both types of

items fall squarely within the definition of "clothes."

Both courts also addressed the legislative history and statutory purpose of section 203(o)

and found that these also supported a conclusion that the provision applied to protective gear.

After the Supreme Court's 1947 decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

690–91 (1946) (which essentially held that the FLSA applied to time spent performing

"preliminary activities" after arriving at the workplace including putting on aprons and overalls,

taping and greasing arms, or removing shirts), employers faced a flood of FLSA suits asking for

payment for activities that traditionally had been uncompensated. To provide some protection to

the employer, Congress enacted the Portal-to-Portal Act. This Act provided that no employer

was currently liable under the FLSA for activities that were not compensable under the then-

existing contracts, customs, or practices and that employers would not be liable in the future for

activities that were "preliminary or postliminary to" the employees' principal work activities.

*See* 29 U.S.C. §§ 251–54. Two years later, Congress added section 203(o) to the FLSA in an

effort to "avoid another series of incidents which led to the portal-to-portal legislation." *See*

---

[3] Although *Anderson* stated that issue of "specialized garments" was not at issue and, therefore, it need not make distinctions between standard and specialized equipment, the case dealt with many items that are at issue here including smocks, hair/beard nets, gloves, and hearing protection.

*Sepulveda*, 591 F.3d at 218 (citing 95 Cong. Rec. 11210 (1949) (comments of Representative Herter)). The provision was designed to protect employer-employee agreements as to whether time spent changing clothes was compensable.

The Court concludes, just as *Anderson* and *Sepulveda* concluded, that interpreting section 203(o) to include the protective gear at issue in this case is supported by the legislative history and statutory purpose of the provision. It allows the decision of whether to compensate for donning and doffing to remain in the hands of the parties through the collective bargaining process. The Plaintiffs have presented no persuasive reason as to why protective gear is excluded from the scope of this purpose.[4]

Finally, the Plaintiffs generally dispute the Recommendation's ultimate conclusion that donning and doffing constitutes "changing clothes" under section 203(o). This Court has reviewed the Recommendation and agrees with its analysis of the issue and its ultimate conclusion that the donning and doffing at issue here constitutes "changing clothes" under section 203(o). In particular, the Court notes that the DOL Opinion Letters, which are afforded deference as discussed *supra*, find that safety gear like that at issue in this case constitutes "clothes" under section 203(o) and, as discussed *supra*, the reasoning in *Anderson* and *Sepulveda* is both sound and persuasive. *See also Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n.3 (5th Cir. 2001) (finding that sanitary garments including lab coats, shoes or shoe coverings, and hair or

---

[4] Contrary to *Alvarez's* suggestion, leaving the decision of compensation for donning and doffing protective gear up to the parties does not create a disincentive for the use of government mandated safety equipment. Indeed, deferring the issue of compensation to the parties does not affect whether the protective gear is mandated, only whether the donning and doffing of such gear is compensated. *See Sepulveda*, 591 F.3d at 218. Moreover, as the 2002 DOL Opinion Letter concluded, it would disserve workers to require compensation of protective gear because employers would be hesitant to require bulkier and more protective gear if, in doing so, they would lose their right to bargain as to compensability of donning and doffing these items.

beard coverings constituted "clothes" within the meaning of section 203(o)).

    3.  Union Did Not Acquiesce in the Non-payment for Donning and Doffing

  The Plaintiffs argue that the Recommendation erred by concluding that the union acquiesced to Butterball's non-payment of time spent donning and doffing. They argue both that they did not acquiesce and that the Recommendation inappropriately requires a union to raise the compensation of donning and doffing during the collective bargaining process. The Plaintiffs, however, misinterpret the Recommendation and the applicable law governing this issue.

  The second requirement under section 203(o) is that an employer's non-compensation of donning and doffing time is "by the express terms of or by custom or practice under a bona fide collective bargaining agreement. . . ." Courts have interpreted this provision to mean only that the employer must have had a custom or practice regarding compensation for donning and doffing in place at the time the CBA was executed; the issue need not have been raised in collective bargaining negotiations. *See Anderson*, 488 F.3d at 958–59 (interpreting the provision as requiring that there must have been a policy concerning compensation, written or unwritten, in force or effect at the time the CBA was executed); *Turner v. Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001) (rejecting the argument that there was not a custom or policy because the issue of compensability had not been raised in formal collective bargaining negotiations); *Allen*, 593 F.3d at 457 (joining *Anderson* and *Turner* in holding that "even when negotiations never included the issue of non-compensation for changing time, a policy of non-compensation for changing time that has been in effect for a prolonged period fo time, and that was in effect at the time a CBA was executed, satisfies section 203(o)'s requirement").

  The Recommendation concluded that Butterball had a custom or practice, of which the

Plaintiffs were aware, of non-compensation for donning and doffing. It based this conclusion on the following facts, none of which are disputed. The CBAs in effect during the times relevant to this action[5] did not include any provision addressing compensation for donning and doffing and the issue was never raised by either party in any of their collective bargaining negotiations. At a Union meeting, however, the union did discuss payment for donning and doffing. Ms. Ybarra was aware that this issue had been raised at a union meeting. Ms. Salazar personally spoke with a union representative about compensation for donning and doffing. In December 2005, a union representative filed a grievance under the CBA for non-payment of donning and doffing time. Butterball[6] denied the grievance and the grievance proceeded through the three-step grievance process. The Union indicated its intent to take the grievance to arbitration but the issue never progressed to this stage. In April 2008, Butterball removed the grievance from its active grievance file. The Court agrees with the Recommendation that these facts establish a custom or practice of non-compensation as Butterball has never paid[7] for time spent donning and doffing and the issue was never raised in the collective bargaining negotiations that gave rise to the CBAs in effect during the time relevant to this action.

The Plaintiffs's object, however, that the Recommendation inappropriately found that

---

[5] These include that 2005-2008 CBA and the 2008-2009 CBA.

[6] The grievance was actually made when the processing plant was owned and operated by ConAgra Packaged Foods Company, Inc. ("ConAgra"). However, because Butterball undisputedly succeeded ConAgra as the owner and operator of the plant, the Court refers to Butterball as the employer at all relevant times.

[7] The fact that Butterball did pay for donning and doffing for a specific group of employees, the employees in the "live hang department", does not prohibit a conclusion that Butterball had a custom or practice with respect to the employees at issue in this lawsuit. If anything, this fact provides support for the conclusion that Butterball had a custom or practice of non-compensation for the employees at issue here.

they had "acquiesced" to Butterball's non-payment for donning and doffing time because they filed a grievance about the issue that was never conclusively resolved. In addressing whether an employer had a "custom or practice", some courts have used the term "acquiescence." For example, *Turner* viewed the second prong of section 203(o) as "simply restating the well-established principle of labor law that a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence." *See* 262 F.3d at 226. *Anderson* noted that the absence of negotiations on the subject "demonstrates acquiescence" to the custom or practice. *See* 488 F.3d at 959. And, in *Allen*, the Fourth Circuit concluded that "evidence of knowledge and acquiescence by the employees" would be required to demonstrate a custom or practice when there had been no relevant negotiations and the policy of non-compensation had not been in place for a long period of time. *See* 593 F.3d at 457. Finally, in *Kassa v. Kerry, Inc.*, 487 F.Supp.2d 1063, 1070 (D. Minn. 2007), the district court concluded that three elements were essential to a finding of "custom or practice": time, knowledge, and acquiescence.

These courts, however, do not use the term to indicate a fundamental agreement with the custom or practice, but rather the lack of pursuit of the issue during negotiations, *i.e.*, acquiescence to a CBA that lacks a provision addressing the compensation of donning and doffing time. Here, there is no dispute that the Union did not pursue the issue of compensation for donning and doffing during the collective bargaining negotiations. Thus, as it is undisputed that the Union (evidenced by the grievance itself) and the Plaintiffs were aware of the issue, but they agreed to a CBA that did not alter or even dispute Butterball's custom or practice of non-compensation, they acquiesced to that custom or practice. *See, e.g.*, *Anderson*, 488 F.3d at 959.

The mere filing of a grievance, especially without active pursuit of that grievance, does not prohibit application of section 203(o).[8]  A contrary conclusion would be at odds with the purpose of section 203(o) itself—leaving the decision of compensation to the collective bargaining process.  For example, a union could refrain from raising the issue in collective bargaining, thereby acquiescing to the non-payment, but then avoid application of section 203(o) in a FLSA claim by filing a grievance.  This would override the agreed-upon CBA and remove the issue from the parties' bargaining, a result directly contrary to the purpose of section 203(o).  Thus, the Court overrules the Plaintiffs' objection regarding acquiescence and concludes that Butterball had a custom or practice of non-payment for donning and doffing time that was in effect at the time the CBAs were negotiated and effectuated.

Accordingly, the Court concludes that the Recommendation correctly determined that section 203(o) bars the Plaintiffs' claims under the FLSA.

B.      CMWA

With respect to the Plaintiffs' CMWA claims, the Recommendation concluded that Butterball, as a wholesale food processing plant, was not a covered business under Act's Wage Order 24 and, thus, the claim failed.[9]

---

[8]  Notably, a situation similar to this was presented in *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, (2d Cir. 1994).  In *Arcadi*, the plaintiffs negotiated for, but ultimately conceded, compensation for donning and doffing.  While the CBA was in effect, however, they filed a grievance regarding such compensation, but did not arbitrate the issue.  The Second Circuit, although not expressly addressing whether filing the grievance constituted "non-acquiescence", determined that the employer had a custom or practice regarding non-compensation and, therefore, applied section 203(o).  Although this case is distinguishable because the parties did not negotiate the issue, *Arcadi* does provide support for the conclusion that filing a grievance does not bar a finding of a custom or practice.

[9]  The Recommendation seems to state that the Plaintiffs' claim under the CMWA is also barred because, just like the FLSA claim, donning and doffing time is not compensable "work."  The Recommendation, however, did not actually reach the issue of whether donning and doffing was compensable as "work" under the FLSA, relying instead on the application of section 203(o).  As

18

The CMWA delegates to the director the power to determine the minimum wages and standards of conditions of labor and hours of employment. *See* Colo. Rev. Stat. § 8-6-106. Pursuant to this delegation, Wage Order 24[10] (the "Wage Order") regulates the wages, hours, and working conditions for "certain employers and employees" in four industries: retail and service; commercial support service; food and beverage; and health and medical. *See* 7 Colo. Code Reg. § 1103-1 (2009). The issue in this case is whether Butterball is covered by the Wage Order as a food and beverage business. The Wage Order defines a food and beverage business as:

> any business or enterprise that prepares and offers for sale, food or beverages for consumption either on or off the premises. Such business or enterprise includes but is not limited to: restaurants, snack bars, drinking establishments, catering services, fast-food businesses, country clubs and any other business or establishment required to have a food or liquor license or permit, and includes any employee who is engaged in the performance of work connected with or incidental to such business or enterprise, including office personnel.

At first glance, the plain language of the statute might include Butterball. *See Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009) (noting that statutory interpretation generally begins with the interpretation of the plain language and commonly accepted meanings of a statute). Butterball is (i) a business, (ii) that prepares food—packaged chicken products, (iii) and offers for sale—sells to grocery stores, restaurants or the like, (iv) food or

---

discussed *supra*, this Court agrees with section 203(o) analysis, but makes no determinations as to whether donning and doffing is compensable "work" under the FLSA.

Furthermore, the Court declines to apply its conclusions regarding section 203(o) to the Plaintiffs' claims under the CMWA. A court may apply federal interpretations of a federal law to a state law if there is no state law on point and the state statute is patterned on or essentially identical to the federal law. *See , e.g.*, *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 773 (Colo. 2008); *Rutt v. Poudre Educ. Ass'n*, 151 P.3d 585, 590 (Colo. Ct. App. 2006); *Chase v. Farmer's Ins. Exch.*, 129 P.3d 1011, 1014–15 (Colo. Ct. App. 2004). In this case, however, there is no provision in the CMWA that is patterned after or essentially identical to section 203(o).

[10] The current order in effect is Wage Order 26. The Plaintiffs, however, brought this claim pursuant to Wage Order 24 and, therefore, it is this regulation that the Court will address.

beverages—packaged chicken products, (v) for consumption—the chicken products are processed as food and are eventually consumed, and (vi) the consumption takes place on or off the premises—presumably at home after the consumer has purchased the product from a grocery store, or at the restaurant.

However, upon close examination of the language and applying rules of statutory construction, the Court finds that Butterball is not a business that falls within the definition. In Colorado, a court's role in construing the meaning of a statutory term is to give effect to the intent of the legislature. *See Lakeview Assocs. v. Maes*, 907 P.2d 580, 584 (Colo. 1995). To accomplish this goal, a court first looks to the plain language of the statute or provision. *See Jenkins*, 208 P.3d at 241. If there is some ambiguity, a court resorts to interpretive rules of statutory construction. *See Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1218 (Colo. 2002). A court may also look to the legislative history of the statute or provision at issue for guidance.

Here, the definition is ambiguous. Although each word is clear, and each phrase is arguably clear when taken in isolation, the provision as a whole has at least two possible interpretations. It is this ambiguity that the Court is presented with regard to Butterball.

First, the definition could be read to cover every food preparer that sells food that is consumed somewhere, sometime, by someone. If so construed, there would be no limitation as to when or where the consumption takes place, or who the consumer is. The statute would apply to all growers, manufacturers, processors, canners, bottlers, handlers and retailers of food and beverage products.

Alternatively, the definition could be read to cover food preparers that sell food to the

ultimate consumer.  It is this interpretation that the Court adopts for a number of reasons.   First,

had the drafters intended a broad application all growers, manufacturers, processors, canners,

bottlers, handlers and retailers of food and beverage products, in could have said so in far

simpler fashion and without examples.

Second, although  the list of examples is not exclusive nor exhaustive, the examples

listed share a characteristic that provides insight into the intended scope of the definition - the

examples describe only businesses that sell food or beverages to the ultimate consumer.  This

characteristic is reinforced by the phrase "consumption either on or off the premises."  *See*

*Pierson*, 48 P.3d at 1220–21.  If the definition reached all food or beverage growers,

manufacturers, handlers, processors, *et al.*, this phrase would be superfluous.  Indeed, there

would be no need to specify that the food was sold for consumption or that it was to be eaten on

or off the premises.  But, if the definition is interpreted to cover only establishments that sell

food directly to the consumer, either for consumption on site or away from the seller's location,

*i.e.*, at home, the phrase is meaningful.

Finally, this interpretation is also consistent with the scope of the Wage Order as a whole.

The other three categories covered by the Wage Order, retail and service, commercial support

service, and health and medical, are all service industries.  This suggests that the food and

beverage category is similarly limited to food service-oriented businesses.  It would be illogical

for the Wage Order to cover manufacturers and wholesalers in the food and beverage industry

but not in other industries such as steel, auto, or toys.[11]  Thus, the Court interprets this definition

---

[11]  The Colorado Minimum Wage Order Number 24 fact sheet provides additional support for this
interpretation.  The fact sheet is distributed by the Colorado Department of Labor and is essentially a
short guide to the provisions of the Wage Order for employers' or employees' reference.  Relevant to this
case, it includes a section titled "industries covered" which lists the four industries expressly covered by

under the more narrow interpretation - as applying only to those businesses that prepare and

offer for sale, food and beverages, directly to the consumer for the consumption either on or off

premises.

   Butterball does not fall into this category because it does not sell its products to the

ultimate consumer.  It is a processor that wholesales its products to other businesses (such as

grocers, restaurants, and retailers), who, in turn, offer the food for sale to consumers.  Butterball

has no retail business.  Butterball does not maintain a retail food establishment license and is

registered with the Colorado Department of Public Health and Environment as a Wholesale Food

Manufacturer and/or Storage Facility.  The fact that Butterball sells gift certificates on its

website does not change this fact as these gift certificates are not redeemable through Butterball

---

the statute.  The section also lists some of the industries that are not covered by the Wage Order including manufacturing and wholesale.  The fact sheet's express exclusion of manufacturing and wholesale indicate that these industries are not intended to be covered by the Wage Order.  The fact sheet is meant to provide a condensed and simplified guide for employers to know what Colorado requirements they must comply with and for employees to know their rights under Colorado's labor laws.  Thus, the exclusion suggests that the Colorado Department of Labor does not believe that manufacturers and wholesalers are covered by the Wage Order.

The Court notes, however, that the Colorado Department of Labor has issued an Advisory Bulletin and Resource Guide that suggests that some wholesalers are covered by the Wage Order.  The September 2008 Bulletin states that "A bakery that operates on a retail or wholesale basis and prepares and offers food for sale or consumption on or off its premises is covered by the Wage Order."  This seems to indicate that wholesale bakeries, and by analogy other wholesale businesses, are subject to the Wage Order.  The Court, however, understands the Bulletin's interpretation to be limited to certain circumstances not present here.  The Bulletin does not state that the Wage Order applies to all wholesale bakeries.  Rather, it limits the application of the Wage Order to those that prepare and offer "food for sale or consumption on or off its premises."  This limitation is directly related to the language used in the definition itself and, therefore, its inclusion indicates that the Bulletin did not intend to extend the scope of the definition, only to clarify.  As discussed *supra*, this Court does not interpret the definition to include manufacturers or wholesalers.  Furthermore, this phrase appropriately limits this interpretation of the Order to bakeries that sell food for consumption or for resale, *i.e.*, purchasers can purchase either as a consumer or as a retailer from the bakery.  This precludes a bakery, or other food business, from being exempt from the Wage Order simply by engaging in some wholesale activities.  This interpretation of the Bulletin is consistent with the scope of the Wage Order as a whole—there is no reason to believe that the Wage Order is intended to cover food and beverage manufacturers or wholesalers but not manufacturers or wholesalers in other industries.

itself but must be presented to a participating retailer. The fact that Butterball offers certain "distressed" food product to its employees four times per year also does not change the fact the inherent nature of Butterball's business as a wholesaler. This food is offered as a benefit to the employees only and is offered only four times per year. Thus, given the nature of Butterballs business, the Court concludes that the Recommendation was correct in determining that the Wage Order does not apply to Butterball.

**IT IS THEREFORE ORDERED** that

(1)     The Plaintiffs' Objections **(#84)** are **OVERRULED**.

(2)     The Recommendation of the Magistrate Judge **(#82)** is **ADOPTED**.

(3)     Butterball's Motion for Summary Judgment **(#40)** is **GRANTED**.

(4)     The Plaintiffs' Motion for Partial Summary Judgment **(#41)** is **DENIED**.

(5)     The Plaintiffs' Motion to Certify Class **(#34)** is **DENIED, AS MOOT**.

(6)     The Clerk of Court shall close this case.

Dated this 15th day of March, 2010

                              **BY THE COURT:**

                              _____

                              Marcia S. Krieger
                              United States District Judge